**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CURTISS-WRIGHT CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-2799 (SDW)(MCA) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| RODNEY HUNT COMPANY, INC., | : | |
| | : | |
| Defendant. | : | February 18, 2014 |
| | : | |
| | : | |

**WIGENTON**, District Judge.

Before the Court is Defendant Rodney Hunt Company, Inc.'s ("Defendant") Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendant's Motion to Dismiss is **denied**, in part, with respect to the breach of contract claim, and **granted**, in part, with respect to the claims for consumer fraud, negligence, fraud, and fraudulent concealment.

**FACTUAL HISTORY**

***Parties***

Curtiss-Wright Corporation ("Plaintiff") is a New Jersey company that designs and manufactures technologies used in "defense, power generation, oil and gas, commercial aerospace, and general industrial markets." (Am. Compl. ¶ 4; Pl. Opp. 16.) EMD is a division within Plaintiff located in Pennsylvania and is involved in designing and manufacturing complex

1

electromechanical equipment.  (Am. Compl. ¶ 5; Def. Br. 19.)  In 1994, EMD was owned by Westinghouse Corporation ("Westinghouse").  (Am. Compl. ¶ 8.)

Defendant is a Massachusetts corporation involved in the water power and control industries.  (Id. ¶ 1.)

### *Factual Allegations*

In 1994, EMD entered into a contract with Defendant to purchase a Rotovalve Cone Valve (the "valve") to be delivered on or before February 10, 1995.  (Id. ¶ 8.)  The valve was to be installed in EMD's K-Loop testing facility which was used for the production testing of coolant pumps.  (Id. ¶ 10.)  EMD's K-Loop testing facility and its component parts "were required to be free of any detrimental materials, including lead" because such materials would require rigorous cleaning and could damage the steel and steel alloys.  (Id. ¶¶ 11-12.)  Plaintiff alleges that at the time of contracting, Defendant knew or should have known that the K-Loop facility and valve could not contain lead.  (Id. ¶ 13.)  Additionally, the manufacturing plans for the valve did not contain any lead parts or materials.  (Id. ¶ 14.)

Plaintiff alleges that Defendant intentionally included a lead ring or disc within the valve while it was being manufactured.  (Id. ¶ 15.)  Plaintiff further alleges that "there is no plausible way that [Defendant] would not have been aware that it was installing a lead component into the [valve]."  (Id. ¶ 16.)  Because the lead ring or disc was enclosed inside the interior casing of the valve, Plaintiff claims that EMD had no way of knowing that there was lead contained in the valve.  (Id. ¶ 17.)

Defendant delivered the valve to Plaintiff in February 1995.  (Id. ¶ 18.)  For years, the K-Loop and valve operated without any problems.  (Id. ¶ 19.)  On December 2, 2008, EMD installed a coolant pump into the K-Loop facility for production testing.  (Id. ¶ 21.)  On January

6, 2009, the pump's motor unit was disassembled and EMD personnel discovered three pieces of foreign material in the pump's thermal barrier.  (Id. ¶¶ 22-23.)  The foreign materials were analyzed and found to contain lead.  (Id. ¶ 24.)

On or about March 27, 2009, the K-Loop and valve failed.  (Id. ¶ 31.)  While disassembling the valve, multiple pieces of foreign material appearing to be a ring or disc were found in the valve.  (Id. ¶ 32.)  The foreign elements in the valve were identified to be lead, tin, antimony, and copper.  (Id. ¶ 33.)  In or around May 2009, Defendant's representatives indicated to Plaintiff that there was no reason for lead to be in the valve sold to EMD, but that other valves manufactured at the time of sale contained lead.  (Id. ¶ 34.)

**PROCEDURAL HISTORY**

On March 25, 2013, Plaintiff filed its Complaint in the Superior Court of New Jersey, Morris County Law Division alleging breach of contract and negligence.  On May 1, 2013, the case was removed to this Court based on diversity of citizenship.  Defendant moved to dismiss the Complaint on May 22, 2013.  On June 10, 2013, Plaintiff filed an Amended Complaint adding allegations and new causes of action for fraudulent concealment, common law fraud, and a violation of the New Jersey Consumer Fraud Act ("CFA") and Defendant withdrew his initial Motion to Dismiss.  On July 12, 2013, in response to the Amended Complaint, Defendant filed a Motion to Dismiss.

**LEGAL STANDARD**

***Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)***

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief."  This Rule "requires more than labels and conclusions, and a formulaic recitation of the

3

elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "'requires a 'showing' rather than a blanket assertion of an entitlement to relief'" (quoting Twombly, 550 U.S. at 555 n.3)).

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips, 515 F.3d at 231 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (third alteration in original) (internal citations omitted) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the

required element." Phillips, 515 F.3d at 234 (alterations in original) (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (3d Cir. 2009). First, the court must separate the factual elements from the legal conclusions. Id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 556 U.S. at 678). Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35).

***Heightened Pleading Standard under Fed. R. Civ. P. 9(b) for Fraud Claims***

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Park v. M&T Bank Corp., No. 09-cv-02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)). Plaintiffs can satisfy this standard by alleging dates, times, places, and other facts with precision. Park, 2010 WL 1032649, at *5.

## DISCUSSION

### I.       Choice-of-law Determination

As a preliminary matter, the parties dispute which state law applies to all of the claims at issue.  A federal court sitting in diversity jurisdiction must apply the forum state's choice-of-law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Robeson Indus. Corp. v. Hartford Acc. & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999).  New Jersey courts apply the two-pronged "most significant relationship" test of the Restatement (Second) of Conflict of Laws.  P.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).

The first prong of the analysis requires courts to examine the substance of the potentially applicable laws to determine if an actual conflict exists.  Id. (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  If there is no actual conflict, the analysis ends and the law of the forum state applies.  See Rowe v. Hoffman–La Roche, Inc., 189 N.J. 615, 621 (2007).  If a conflict does exist, the court must then determine which jurisdiction has the "most significant relationship" to the claim.  Camp Jaycee, 197 N.J. at 136; Grossbaum v. Genesis Genetics Inst., LLC, 489 F. App'x 613, 616 (3d Cir. 2012) (noting that "[i]f an 'actual conflict' exists between the laws of jurisdictions with ties to a case, New Jersey applies the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws").

## A.  Breach of Contract Claim

Plaintiff argues that Massachusetts law applies to the breach of contract claim because the contract contains a choice-of-law provision specifying that Massachusetts law applies.  (Pl. Opp. 13-14.)  Central to Plaintiff's argument is that Massachusetts law allows for the tolling of the statute of limitations based on fraudulent concealment.  (Id. at 18.)  Plaintiff notes that New Jersey law similarly allows for tolling of the statute of limitations for fraudulent concealment.  (Id.)

Defendant argues that no conflict exists with respect to Plaintiff's breach of contract claim because New Jersey, Pennsylvania, and Massachusetts have all adopted the UCC, including the applicable four-year statute of limitations.  (Def. Br. 8.)  Defendant acknowledges that both Massachusetts and New Jersey law provide for tolling of the statute of limitations based on fraudulent concealment.  (Def. Reply 2-4.)  As it relates to the choice-of-law provision, Defendant argues that the resulting contract terms and conditions—including the choice-of-law provision—were proposed by Plaintiff and Defendant "accepted those terms and conditions in lieu of its own."  (Def. Reply 7.)

Under New Jersey law, a contractual choice of law provision will be upheld unless doing so would violate its public policy.  <u>Instructional Sys., Inc. v. Computer Curriculum Corp.</u>, 130 N.J. 324, 341 (1992).  Here, the contract unequivocally states that "[t]his contract shall be governed by the laws of the Commonwealth of Massachusetts."  (Dkt. 13-1, Declaration of Ryan Milun ("Milun Decl.) Ex. A, at 2.)  Although Defendant argues that Plaintiff "insisted upon its own terms," Defendant nonetheless accepted these terms when entering into the contract.  (<u>See</u> Def. Reply 1.)  Moreover, Defendant does not provide any viable arguments as to why Massachusetts law—as provided in the choice-of-law provision—should not apply.  Thus, this Court finds that Massachusetts law applies to the breach of contract claim.

**B. Negligence, Common Law Fraud, and Consumer Fraud Claims**

Both parties recognize that an actual conflict of law exists with respect to Plaintiff's claims for negligence and common law fraud under Pennsylvania, Massachusetts, and New Jersey law—namely with respect to the statute of limitations period.  Under Pennsylvania law, the statute of limitations for negligence and common law fraud is two years from the date of injury.  42 Pa. Con. Stat. § 5524.  Under Massachusetts law, the statute of limitations for

negligence and common law fraud is three years from the date of injury.  M.G.L. ch. 260 § 2A. Under New Jersey law, the statute of limitations for negligence is two years and common law fraud is six years.  N.J.S.A. §§ 2A:14-1, 2.

Additionally, an actual conflict of law exists with respect to Plaintiff's consumer fraud claim under Pennsylvania law and New Jersey law.  Under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), a private right of action only applies for purchasers of goods "primarily for personal, family, or household purposes."  Coleman v. Commonwealth Land Title Ins. Co., 684 F. Supp. 2d 595, 618 (E.D. Pa. 2010).  However, New Jersey's CFA allows recovery for the sale of goods or services purchased for commercial or business purposes. See Debra F. Fink, D.M.D., MS, PC v. Ricoh Corp., 365 N.J. Super. 520, 571 (Ch. Div. 2003).

Because an actual conflict of law exists for all of these claims, this Court will undergo a choice-of-law analysis on an issue-by-issue basis.  See Camp Jaycee, 197 N.J. at 143.  Under the "most significant relationship" test, "the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues."  Id.  Courts consider the following contacts in their analysis: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation[,] and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145 (1971).

1.  **Negligence**

Pursuant to the Restatement, with respect to negligence claims, "the local law of the state where the injury occurred [applies] . . . unless . . . some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in

which event the local law of the other state [applies]."  Id. § 147.  The factors that courts should consider in determining the applicable state law include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability[,] and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Id. § 6.

Defendant argues that Pennsylvania law should apply to Plaintiff's negligence because it has the most significant relationship to the claims at issue.  (Def. Br. 15.)  In support, Defendants point to the fact that Plaintiff was injured in Pennsylvania, EMD is located in Pennsylvania, the valve was shipped to Pennsylvania, and the valve was used in Pennsylvania.  (Id. at 17-18.)

Plaintiff argues that it is premature to decide which state law applies to the non-contract claims because discovery is necessary to determine which state has the most significant interest. (Pl. Opp. 15.)  In response to Defendant's argument that Pennsylvania law applies, Plaintiff contends that both New Jersey and Massachusetts have significant interests as well.  (Id. at 16.) In support of applying New Jersey law, Plaintiff argues that it is a New Jersey resident, EMD was a division of Plaintiff at the time the damage occurred and was discovered, and Plaintiff started an insurance coverage action in New Jersey to recover damages for lead in the K-Loop and reactor coolant pump.  (Id. at 16-17.)

This Court finds that there is sufficient information to conclude that Pennsylvania has the most significant relationship to the parties and issues in this matter.  Specifically, Pennsylvania is the location where EMD is located, where the valve was used, and where the injury occurred.  In considering the factors set forth in the Restatement § 6, no state has a greater interest or more

significant contacts than Pennsylvania.  New Jersey's only significant contact with this action is that Plaintiff is located there.  Similarly, Massachusetts's only contact is that the valve was manufactured there.  Based on the Amended Complaint and the parties' briefs, this Court finds that Pennsylvania law applies to the negligence claim.

### 2.  Fraud and Consumer Fraud

For purposes of choice-of-law determination, courts undergo the same analysis for fraud and consumer fraud claims.  Section 148 of the Restatement sets forth the following factors for courts to consider in determining which state law applies for fraud claims:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148.

Defendant argues that most of the factors favor applying Pennsylvania law including the place where EMD received and relied on Defendant's alleged misrepresentations and where the valve was situated.  (Def. Br. 20.)  Defendant acknowledges that certain factors favor applying Massachusetts law; for instance, the alleged misrepresentations were made in Massachusetts and Defendant is located there.  (Id.)  Defendant notes that no factor favors applying New Jersey law except that EMD's parent company is headquartered in New Jersey.  (Id.)  As with the negligence claim, Plaintiff states that a choice-of-law determination for the fraud claim is premature.  (Pl. Opp. 15-17.)

In reviewing the factors articulated in the Restatement, this Court finds that Pennsylvania has the most significant relationship to the fraud claims at issue.  As Defendant correctly pointed out, the valve was shipped to EMD in Pennsylvania, the valve was used in Pennsylvania, and EMD relied on Defendant's alleged misrepresentations in Pennsylvania.  Moreover, the sole tie to New Jersey—Plaintiff's headquarters—is not sufficient to overcome the several factors favoring Pennsylvania.  See Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 449 (D.N.J. 2012) ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or 'that unlawful conduct emanated from New Jersey' will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship.").  Contrary to Plaintiff's argument, the determination of which law applies to the fraud claim is not premature.  Between the Amended Complaint and the parties' briefs, there are sufficient facts to conclude that Pennsylvania law applies to the fraud claims.  Because Pennsylvania law applies, this Court will analyze Plaintiff's consumer fraud claim under Pennsylvania's UTPCPL.  See Maniscalco v. Brother Int'l (USA) Corp., 709 F.3d 202, 211 (3d Cir. 2013) (affirming application of South Carolina law rather than New Jersey law for consumer fraud claim based on review of Restatement factors).

## II.     Breach of Contract

As this Court previously determined, Massachusetts law will apply to the breach of contract claim.  Massachusetts has adopted the Uniform Commercial Code ("UCC"), including the statute of limitations provision.  M.G.L. ch. 106, § 2-725.  Pursuant to § 2-725, the statute of limitations in contracts for sale "must be commenced within four years after the cause of action has accrued."  Id.  Section 2-725 further provides that "[a] cause of action accrues when the

11

breach occurs, regardless of the aggrieved party's lack of knowledge of the breach."   Id. However, "[t]his section does not alter the law on tolling the statute of limitations."   Id.

Under Massachusetts law, the statute of limitations may be tolled upon a showing of fraudulent concealment where "the wrongdoer [ ] 'concealed the existence of a cause of action through some affirmative act done with intent to deceive.'"   Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 175 (1992); see Callahan v. Wells Fargo & Co., 747 F. Supp. 2d 247, 253 (D. Mass. 2010).   "Once fraudulent concealment is established, the limitations period is tolled until plaintiffs actually become aware of the operative facts. Mere suspicion of fraud is insufficient to end the tolling period."   Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 242 (1st Cir. 2005) (internal citations omitted).

Although Plaintiff alleges only one count for breach of contract in its Amended Complaint, Plaintiff avers in its opposition brief that there are two separate breaches of contract at issue.   (Pl. Opp. 17-22.)   According to Plaintiff, the first breach of contract was Defendant's improper inclusion of lead within the valve at the time it was manufactured.   (Id. at 17.)   Plaintiff asserts that the second breach of contract related to the improper release of lead into the K-Loop test facility and the coolant pump which occurred after March 2009 and was discovered in May 2009.   (Id. at 22.)

### A.  First Breach of Contract

Defendant argues that Plaintiff cannot maintain a breach of contract claim relating to the allegedly improper inclusion of lead in the valve because the statute of limitations has run.   (Def. Br. 9.)   Defendant contends that Plaintiff's breach of contract claim accrued at the time of the alleged breach which was "during the manufacture of the valve, which was completed no later than early 1995, when the valve was shipped to EMD's facility in Pennsylvania."   (Id.)

12

Defendant thus argues that the statute of limitations expired in 1999, based on the UCC's four-year statute of limitations. (Id.) Next, Defendant contends that Plaintiff's allegations of fraudulent concealment are insufficiently pled, given the requirement to plead fraud with particularity. (Id. at 10, 12.) Furthermore, Defendant asserts that "because the alleged improper manufacture of the valve is the basis for the underlying breach of contract claim, it cannot also serve as the predicate for the alleged fraudulent concealment." (Id. at 12.)

Plaintiff argues that Defendant's alleged fraudulent concealment of lead within the valve properly tolled the statute of limitations. (Pl. Opp. 18.) Plaintiff points to allegations in the Amended Complaint in support of its argument that Defendant engaged in fraudulent concealment. (Id. at 18-21.)

Based on the Amended Complaint and parties' briefs, this Court finds that there is insufficient information to make an appropriate decision as to whether the statute of limitations was tolled based on fraudulent concealment. Discovery is needed to determine more details regarding the nature of Defendant's alleged fraudulent concealment and when Plaintiff reasonably should have known or discovered the alleged breach. Accordingly, Defendant's motion to dismiss with respect to the first breach of contract claim is denied.

### B. Second Breach of Contract

Plaintiff alleges that Defendant "breached the separate requirement in the Westinghouse terms and conditions that the K-[L]oop testing facility and reactor coolant pumps must be free from detrimental materials, including lead." (Pl. Opp. 22.) Plaintiff maintains that this occurred after March 2009 and was discovered in May 2009. (Id.) According to Plaintiff, as the initial Complaint was filed on March 25, 2013, this breach of contract claim was timely filed. (Id.)

13

Plaintiff further argues that the Westinghouse terms were ancillary to the contract for the sale of goods and thus the UCC is inapplicable.  (Id.)

Defendant argues that "the alleged injury (*i.e.,* the release of lead material into the K-Loop) in 2009" cannot be a separate breach of contract because it occurred "14 years after [Defendant] had any contact with the allegedly defective valve." (Def. Reply 4.)  Furthermore, Defendant asserts that any breach relating to the requirement to comply with applicable laws, codes, and standards would have occurred at the time the product was manufactured.  (Id. at 5.)  Additionally, Defendant contends that the Westinghouse terms were incorporated by reference and became a part of the parties' agreement.  (Id. at 4-5.)

This Court agrees with Defendant.  Despite Plaintiff's creative attempt to articulate a second breach of contract, it essentially involves the same facts and the same contract as the first breach of contract claim.  As Defendant noted, the Westinghouse terms were a part of the agreement involving the sale of the valve and these terms did not create a separate contract or ancillary obligations.  To the extent this Court will consider Plaintiff's injuries and discovery of lead in May 2009, it will be in tandem or within the context of the first breach of contract claim.  No second breach of contract claim can be sustained in this case.

## III.   Negligence and Common Law Fraud Claims

As this Court previously concluded, Pennsylvania law will apply to Plaintiff's claims for negligence and common law fraud.  Under Pennsylvania law, if "the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts . . . determine whether the 'gist' [ ] of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious."   Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999); see Advanced Tubular Products, Inc.

v. Solar Atmospheres, Inc., 149 F. App'x 81, 84 (3d Cir. 2005) (noting that under Pennsylvania's "gist of the action" doctrine, "a plaintiff is barred from bringing a tort claim when such a claim is merely another way of stating the party's breach of contract claim or when the success of such a claim is wholly depend[e]nt upon the terms of the contract"). "The important difference between contract and tort claims is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie from the breach of duties imposed by mutual consensus." Greenspan v. ADT Sec. Servs. Inc., 444 F. App'x 566, 570-71 (3d Cir. 2011) (citing Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. Ct. 2005)).

In the instant matter, Defendant argues that the only obligations it owed to EMD stemmed from the parties' contract. (Def. Br. 24.) Defendant further argues that it had "no independent social duty to refrain from making a valve containing lead." (Id.) Because Plaintiff's claims for negligence and fraud arise from the parties' contractual relationship, Defendant contends that these claims are barred by the "gist of the action" doctrine. (Id.)

This Court finds that Plaintiff's claims for negligence and common law fraud warrant dismissal based on the "gist of the action" doctrine. As Defendant correctly noted, but for the parties' contract, the alleged fraud would not have taken place. Here, Plaintiff's claims for negligence and common law fraud are merely another way of stating Plaintiff's breach of contract claim. Thus, they are dismissed. As these claims are dismissed based on the "gist of the action" doctrine, it is unnecessary for this Court to reach the merits of the statute of limitations arguments with respect to these claims.

**IV.    Consumer Fraud**

Under the UTPCPL, "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money

15

or property. . . may bring a private action."  73 Pa. Stat. Ann. § 201-9.2.  In other words, only purchasers of goods "primarily for personal, family, or household purposes" have a private right of action under the UTPCPL.  <u>Coleman v. Commonwealth Land Title Ins. Co.</u>, 684 F. Supp. 2d 595, 618 (E.D. Pa. 2010).  "Whether a purchase is primarily for household purposes and a cause of action under the UTPCPL is available depends on the purpose of the purchase, not the type of product purchased."  <u>Id.</u>

In this case, it is undisputed that EMD's purchase of the valve from Defendant was for business purposes.  Under the UTPCPL, Plaintiff does not have a private cause of action against Defendant.  Thus, this claim is dismissed.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is **DENIED**, in part, with respect to the breach of contract claim, and **GRANTED**, in part, with respect to the claims for fraudulent concealment, negligence, fraud, and consumer fraud.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

cc:  Madeline Cox Arleo, U.S.M.J.

16